ELVIRA SOTO, Plaintiff and Appellant, *v.* ANTONIO LUCCHETTI, Defendant and Appellee. URBANO SOTO, a minor represented by his mother with *patria potestas,* EUGENIA LÓPEZ, Plaintiff and Appellant, *v.* ANTONIO LUCCHETTI, Defendant and Appellee.

Nos. 8141 and 8142. Argued March 12, 1941.—Decided May 27, 1941.

*Enrique Tristani, Jr.*, for appellant. *George A. Malcolm, Attorney General, R. García Cintrón, Assistant Attorney General,* and *C. Domínguez Rubio,* Attorney for the Irrigation Service, for appellee.

Mr. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

These lawsuits have the same origin, the accidental death of Angel Soto on the night of August 19, 1938, in the hamlet of Paso Seco, Municipality of Santa Isabel.

The first case was brought by Elvira Soto, mother of Angel; the second by Urbano Soto, a natural son of the deceased, and both actions are directed against Antonio Lucchetti, Chief and Director of the Electric Power Service in all the Island of Puerto Rico and of the Water Power Administration, both of which belong to The People of Puerto Rico, by whom he is and was employed on the day of the accident. The mother claims $10,000 and the son another $10,000.

The defendant demurred to the complaints alleging that they did not adduce facts sufficient to constitute a cause of action against him. The district court granted the demurrer and gave plaintiffs ten days for filing amended complaints. As the period elapsed without the amended complaints being filed, the defendant requested the court to render judgment

upon the pleadings. The court did so, rendering judgment for defendant with costs and attorney's fees.

Plaintiffs appealed. They assign in their briefs one sole error, that is, they charge that the trial court erred in holding that the complaints did not contain facts sufficient to establish a cause of action. Therefore, both appeals will be decided jointly in this opinion, which will serve as the basis of the judgments to be rendered in these cases.

The facts substantially are set forth in the complaints as follows:

The defendant, as an employee of The People of Puerto Rico, is the person directly and solely responsible for the efficient operation and conservation of all the power transmission lines in the Island of Puerto Rico and the only one with the authority and the duty of ordering repairs and the new installations to be carried out in said lines, whenever they belong to The People of Puerto Rico;

One of the lines belonging to The People and which transmits high power current passes over the hamlet of Paso Seco near Santa Isabel; it consists of three conductor wires and it crosses the highway from Santa Isabel to Coamo at a place where there are more than one hundred dwelling houses inhabited by about one thousand persons, including men, women and children, one of which houses belonged to Angel Soto. The mother and son, here plaintiffs, lived in that house together with Angel Soto;

Angel Soto was about 25 years of age, he was a vigorous worker and earned a dollar a day, and on August 19, 1938, at about 9:30 in the evening, when he was about to go to bed, he heard a voice shouting from the street that the house was on fire, and immediately ran out of the house and became entangled with a high tension wire which he did not see, nor knew that it had broken and fallen down, dying as a consequence of said accident;

The wires in that place and on that date were in very poor condition, they were not insulated for the protection

of life and property, they were loosely strung on the posts and as a consequence were buffetted about by the wind and often came in contact with each other, with the consequent ignition, the neighbors having informed this to the caretakers of the line in the locality and the defendant directly;

Said wires were old and useless, a condition with which the defendant was familiar, and when one of them came in contact with the house of Angel Soto, the house began to burn in one corner;

The defendant was negligent in permitting wires of such a high voltage to remain in this condition, knowing that many persons lived in that place and that there was a highway of much traffic near it, and in not ordering the installation of the nets used to catch broken wires before they fall to the ground, and he was likewise negligent in not ordering the employee under his direction to remove the wires which he knew were in such poor condition, especially when he was informed of this before the accident;

The death of Angel Soto was due exclusively to the fault and negligence of the defendant and his carelessness and gross negligence in permitting a high power current to be transmitted through wires in such poor condition;

The breakage and fall of the wire which caused the death of Angel Soto was due exclusively to its completely useless condition. The wind blew it into contact with another wire of the same line and since it was not protected, it fell to the ground;

And finally, due to the death of their son and father respectively, the plaintiffs have undergone severe hardships, have been deprived of his protection and aid and for that hardship and for their physical and mental sufferings, they claim from the defendant the sums above stated.

■ The defendant maintains in the first place that these actions are really directed, by their nature and by their pleadings, against The People of Puerto Rico, although they have been brought against the defendant in his character as an

employee of The People, since the acts which appellants charge caused the damages, are the result of his activities as an employee of The People, which is the owner of the Water Power System which controls the transmission lines, one of whose wires caused the death of Soto. In short, the defendant alleges that The State is in this case the "enterprise", the "master" which must answer for his acts.

The statute governing this action is found in the following provisions of the Civil Code (1930 ed.):

"Section 1802.—A person .who by an act or omission causes damage to another when there is fault or negligence shall be obliged to repair the damage so done.

"Section 1803.—The obligation imposed by the preceding section is demandable, not only for personal acts and omissions, but also for those of the persons for whom they should be responsible.

" * * * * * * *

"The State is liable in this sense when it acts through a special agent, but not when the damage should have been caused by the official to whom properly it pertained to do the act performed, in which case the provisions of the preceding section shall be applicable.

" * * * * * * * "

We are dealing with a judgment upon the pleadings. According to the complaint, the truth of whose facts was admitted for the purposes of the demurrer, the owner of the Water Power System, that is, the "enterprise" is The People of Puerto Rico and if the liability of The People were not limited by the very statute which establishes it, to the case in which it acts through a special agent, we would uphold defendant's contention, without any. further investigation.

But the limitation exists and we must decide whether the defendant did or did not act as a special agent.

Manresa, discussing Section 1903 of the Spanish Civil Code, which establishes the liability of The State in terms similar to ours, says:

"The same criterion serves as the basis of the liability imposed upon The State; but it should be remembered that said liability, as

established by the Supreme Court in its Judgment of May 18, 1904, is limited to damages caused by the employees of The State, when they act as its special agents, and does not cover cases where the damages were caused by employees who were acting within the scope of their regular duties, since only in the first case can the employee be presumed guilty of the fault or negligence which is the basis of these obligations.

"By a special agent, as those words are used in Section 1903, the statute means, in accordance with said Judgment, 'one who receives a specific and concrete commission, *alien to his regular duties* if he is a public official, in order that he, as the representative of The State, and with power to bind said body, may fulfill the commission with which he was entrusted, and this concept cannot cover an executive agent, who is a regular employee of the administration, and who exercises normal functions and duties regulated by law or by departmental rules'; this is a doctrine which must be applied to all those public officials who were merely performing their normal duties when they executed the acts which caused the damage." 12 Manresa, *Comentarios al Código Civil Español* 558, (4th edition).

Applying the statute to the facts of the instant case in the light of this commentary and the decisions which it cites, we must hold that the state is not liable, since the defendant did not act as a special agent, but was merely carrying out the normal functions of his office.

The Act of April 13, 1916, page 151, as amended in 1928, page 130, authorizing the district courts to take cognizance of actions against The People in certain cases, cannot vary our conclusion, since, as this Court decided in *Ortiz* v. *People*, 44 P.R.R. 146, 147:

"By this enactment the People of Puerto Rico consented to be sued in certain cases where there was a cause of action under the law already in force. The amendment of 1928 did not create any new cause of action. It was a waiver of immunity from any action to enforce an existing liability, not a waiver of immunity in cases where there was no legal liability upon which to base an action. See 36 Cyc. 915; *Saurí & Subirá* v. *Sepúlveda*, 25 P.R.R. 224; and *Austin W. Jones Co.* v. *State*, 119 Atl. 577.

"By the terms of section 1804 of the Civil Code (1803 of the Revision of 1930) the People of Puerto Rico are not liable for torts except when committed by a special agent."

 If the State is not liable, who is? The statute is clear. It says that when the damage is caused by the official to whom it properly pertained to do the act performed, the provisions of the preceding section shall be applicable, to wit: a person who by an act or omission causes damage to another through his fault or negligence, shall be obliged to repair the damage so done.

To hold the contrary would be, to relieve all public officials, because of their conditions as such officials, from liability for their negligent acts or omissions, no matter the damage caused to other persons. And such a decision could not find justification within the spirit of our laws.

In his commentaries on Section 1112 of the Argentine Civil Code which establishes the liability of public officials in cases of this nature, Dr. Llerena cites the opinion of the Attorney General of the Republic which was accepted in all its parts by the Tribunal of the Capital District, in its decision of the action brought before it against the Mayor of the Capital, for damages caused to a private individual while in the performance of his duties. The following paragraphs are from the opinion of the Attorney General of the Argentine Republic:

"Although in France and other monarchical nations which have followed it, there has been established effectively that pernicious system which greatly complicates the relations of private individuals with public officials, and which obstructs to a great extent the possibility of redress for abuses committed by public officials, said system has been abandoned in Great Britain and the United States, where public officials must answer for their act before the courts. (Lieber, *La Libertad Civil*, T. 1 Chapter 10, No. 11, page 119; Tocqueville, *La Democracia en América*, Book 1, Chapter 6, Sec. 2, page 75; Paul Odent, Note to Section 951 of Story.)

"As we have adopted the American Constitution as our model, we find within our own institutions the same doctrine derived from

the basic principles of that Constitution (National Charter of September, 1863, Section 3), and as a result in order to seek redress against an official, one does not have to complain to his administrative superior before resorting to the courts in a demand for justice and redress for an official abuse.

"In such cases, the ordinary courts will in truth be passing upon administrative actions, but examining them exclusively for one purpose, that of determining whether there has been committed an abuse which may have affected an individual in his constitutional rights; and let it not be said that the administration of government will be obstructed or hindered thereby, since it should not be feared that groundless claims for redress, difficult of substantiation, will be multiplied in cases of this kind." 4 Llerena, *Concordancias y Comentarios al Código Civil Argentino,* 184 (4th ed.).

And the *Enciclopedia Jurídica Española* in its annotation concerning the "Public Official" of which Gonzalo del Castillo Alonso is the author, states the following with respect to the civil liability of the public official:

"Studying further the concept of fault, the basis of civil liability, one must arrive at a conclusion that it presupposes the existence of a legal duty, since the person who fails to perform a moral duty does not incur any liability; the performance of a positive or negative act, since acts as well as omissions can be the basis of an action; and the violation of the duty which brings as a result the invasion of another's right, even if there is no specific intent in that direction, since if there were such an intent, *fault* would become *malice.* More specifically, if, as Section 1902 of our Civil Code reads: 'A person who by an act or omission causes damages to another when there is fault or negligence shall be obliged to repair the damage so done', this damage cannot be the object of compensation by the official who has caused it if it is not shown that he was negligent in the performance of his duties, with respect to the private individual who suffered the damage, and that at the same time he failed to perform his duty with respect to the society in which he lives." 16 *Enciclopedia Jurídica Española* 874.

According to the complaint, the defendant official in these cases, as the employee of The People of Puerto Rico, had under his care and control the efficient operation and conservation of the power transmission line which broke and

caused the death of Soto, and said official was negligent because, although he knew personally the poor condition of the wire which broke, he failed to repair it. If that is so, and up to now it has been admitted that it is, his liability, in accordance with the facts and the law, is evident.

■ The other question argued as part of the demurrer is that as the complaints did not allege that the plaintiffs are the sole heirs of Soto, they did not allege a cause of action, it being maintained likewise by appellants that in cases of this sort there is only one cause of action common to all the heirs.

The question was not decided by the district court but it was raised and the appellants insist reasonably that we decide it. The plaintiffs rely on the case of *Ruberté* v. *American R. R.*, 52 P.R.R. 457. The defendant attacks that decision and invokes the case of *Méndez* v. *Serracante,* 53 P.R.R. 807.

Only a few months ago this Court, in the case of *Rodríguez* v. *Ell Tee, Inc.*, 57 P.R.R. ___, said:

"The complaint contains no allegation to the effect that the plaintiff is the sole heir of the deceased nor that the latter died without a will. The plaintiff, however, argues that the cause of action for damages arises from Section 1803 of the Civil Code, and that therefore the plaintiff, being a sister of the deceased, is entitled to indemnity.

"In the case of *Ruberté* v. *American R. R.*, 52 P.R.R. 457, a father was awarded damages for the death of his son, of whom he was not an heir, since the son had left legitimate descendants. It was then said by this Court:

" 'The fact was that Justo Ruberté not only had a duty to support his father but actually contributed to the support. The negligence of the defendant being established, it follows that a cause of action arose in Pablo Ruberté by reason of the death of his son.'

"The decision in the *Ruberté* case, *supra,* was predicated on the fact that the father had been deprived, by the negligent act of the defendant, of continuing to receive from his son the support to which he was entitled as long as the latter lived.

"According to Section 143 of the Civil Code, the legitimate ascendants and descendants are bound to support each other; but this obligation does not exist as between brothers and sisters, unless the

circumstances specified in said section are present, and in this case such circumstances do not appear either from the complaint or from the evidence on which the judgment was based . . . .

"* &ast; &ast; &ast; &ast; &ast; &ast;

"As we have seen, from the provisions of Section 143, *supra*, and from the holding in the case of *Ruberté* v. *American R. R.*, *supra*, the plaintiff, by the mere fact of her being a sister of the deceased, even assuming that she was dependent on the latter for her support, was not entitled to indemnity, as the circumstances enumerated in said Section 143 are not present. In default of legitimate or legitimated ascendants and descendants, the collateral relatives and the surviving spouse shall inherit in the order established by Sections 904 to 910 of the Civil Code (1930 ed.) ; but this does not mean that each brother or sister or collateral relative can by himself or herself bring a separate action for damages. In order that said action may prosper, it is necessary to allege and prove that the plaintiff or plaintiffs is or are the sole heir or heirs of the deceased. In the case at bar, not only was there no allegation that the plaintiff was the sole heir of the deceased, but also there was a failure to allege that the latter had not left any valid will: indispensable requisites for the legal succession to take place."

In this case, as it appears from the summary which we have made of the complaints, it was alleged that the mother as well as the son lived with his father and depended upon him for their maintenance and that would be sufficient, in accordance with the *Ruberté* and *Rodríguez* decisions. We are of the opinion, however, that two separate actions did not lie in this case but instead one joint action should be brought, and that the complaint in said action should allege not only the condition of heirship or dependency but also that the plaintiffs are the sole heirs or dependents of the deceased.

As we have reached the above mentioned conclusions, the judgments appealed from must be reversed, and the demurrers denied insofar as they allege that the complaints did not adduce facts sufficient to constitute a cause of action, and granted insofar as the complaints do not allege in case number 8141 that the plaintiff Elvira Soto, mother of Angel Soto

was the sole heir of her deceased son, and in case number 8142, that the plaintiff Urbano Soto, acknowledged natural son of Angel Soto, was the sole heir of the deceased. It is furthermore decreed that both actions should be merged in one which may be prosecuted by all those with a right to do so, and a period of twenty days is granted for the filing of an amended complaint, said period to be counted from the date when the mandate is received in the lower court.